[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated December 7, 1998, the plaintiff, Nancy Hooge, commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown and other relief. The defendant appeared through counsel and filed a cross-complaint dated January 10, 1999. Both parties appeared with counsel on September 12, 2000 and September 13, 2000 and the plaintiff proceeded on her complaint. The parties presented testimony and introduced documentary evidence. The court, after hearing the testimony and reviewing the exhibits, makes the following findings of fact.
The plaintiff, whose maiden name was Nancy Parsons, married the defendant on November 19, 1977, in New Britain, Connecticut. She has resided continuously in the State of Connecticut for at least 12 months next preceding the filing of the complaint. All statutory stays have expired. The parties have two (2) children issue of the marriage: Daniel Mark Hooge, born February 27, 1984 and Jonathan Andrew Hooge, born February 10, 1986. No other minor children have been born to the plaintiff since the date of the marriage. The court further finds that neither party or their children have been the recipients of any aid from the State of Connecticut or any municipality thereof.
The plaintiff is 47 years of age. She is in very good health having instituted a vigorous exercise and weight training program several years ago and which she has continued to the present time. She and the defendant presently reside in the marital residence located at 258 Carriage Drive in Kensington, Connecticut with the parties two children. She is a high school graduate and also received a bachelor of science degree in business administration from Central Connecticut State College in New Britain, Connecticut in 1977 with a marketing major. Since the date of the marriage she has had a series of part-time and full-time jobs with a variety of work experiences. She is presently employed full-time with the City of New Britain as a teacher's aide. She works the school calendar and is employed when school is in session. Her gross weekly wages from this employment is $355.68. In addition, she receives between $8,000 and $9,000 per year in employee benefits. She has been in her present employment since 1996.
The defendant is 43 years of age. He is in reasonably good health but has experienced a herniated disc in his back which prevents him from strong physical activity involving lifting. He graduated high school and also holds a bachelor's degree. He received his degree from the University of Hartford in 1986. He has been employed with The Hartford in CT Page 13377 the information technology area as a supervisor. His current weekly income is $1,717.69. In the immediately three preceding years he has been the recipient of a performance bonus, but the program for such bonuses has been canceled. He receives the usual employee benefits and, in addition, has stock options with his employer as reflected on his financial affidavit.
There was a significant amount of testimony by both parties as to what they believe to be the causes of the breakdown of the marriage. The plaintiff recited approximately 12 instances throughout the course of the marriage where she felt that the defendant was very confrontational and controlling. On the other hand, the defendant explained each and every situation that the plaintiff referred to except in a couple of instances where he had no recollection of the incident. There was no testimony from any other witnesses as to the causes for the breakdown of the marriage. Based on the evidence, the court finds that both parties are equally responsible for the breakdown of the marriage. The ultimate breakdown came about in March of 1998 at which time the defendant told the plaintiff that he felt there was more to life then her and the children. The parties went into counseling for a brief period of time, but terminated counseling based on the defendant's feeling that it was serving no useful purpose. Both parties have become involved in sexual relationships subsequent to the filing of the complaint by the plaintiff. There does not appear to be any evidence that these relationships had anything to do with the breakdown of the marriage but reflect on the parties lifestyles. The plaintiff and her boyfriend have traveled extensively since they first started having intimate relations in the middle of 1999. The expenses for these numerous trips were paid for by the plaintiff's boyfriend. There was no evidence to indicate that the defendant, on the other hand, has traveled with his girlfriend.
The court further finds that both parties contributed substantially to the upbringing of their children. They also both contributed substantially to the care and maintenance of the marital residence.
The parties were essentially in agreement with respect to the issues of custody and parenting plans. The court, in addition to receiving proposed orders from the parties, also received a proposed parenting plan from the attorney for the minor children. By agreement, one of the children will live with the defendant and the other child will live with the plaintiff. With respect to the marital assets, there was no claim by either party that any of the assets were in existence prior to the marriage. Further, there was no evidence of any inheritances of a substantial nature or gifts received from third parties during the course of the marriage except for a claimed inheritance of $18,647 received by the defendant from his father's estate reflected on his financial CT Page 13378 affidavit.
The major issue in this matter is the determination of the earning capacity of the plaintiff. The defendant's earning capacity is not an issue in view of his long-term continuous employment with The Hartford as a salaried employee. His earning capacity is his current earnings subject, of course, to any incremental raises that he may receive or additional compensation through bonuses, promotions or lateral transfers. Since 1986 and for some years prior thereto, the plaintiff has been engaged in working with school systems. She has been with the same employer since 1996 performing the same functions today as she did when she started. The plaintiff made it very clear that she thoroughly enjoys her present employment which gives her a great deal of flexibility in terms of being at home when the children are not in school. It also gives her the ability to have substantial vacations during the school year as well as the major portion of the summer, which she has utilized in taking many of the trips previously referred to. While her flexibility argument had merit when the children were younger, they are now 14 and 16 years of age. Further, one of the children will be living with the defendant full-time and the other child has indicated that he wishes to spend 50 percent of his waking hours being with his father. In connection with the issue of earning capacity, the defendant presented testimony of Dr. James S. Cohen, a vocational rehabilitation specialist who testified as an expert witness. The testimony of Dr. Cohen was credible. The court does not completely agree with some of the potential jobs that might be available to the plaintiff as suggested, but does agree that the plaintiff could increase her earnings and still stay within her chosen field, i.e., special education teacher's aide or teacher. The court finds that the plaintiff, over a period of time and with further education, can become a special education teacher. If that is unavailable to her, then she has the option of working in a part-time capacity after school and during the summers without working an average of more than 40 hours per week. For purposes of the alimony order hereinafter set forth, the court finds that the plaintiffs earning capacity will increase to $30,000 per year over the next ten years. Further, the alimony orders hereinafter set forth shall affect the child support orders in that the alimony will be includable by the plaintiff in her gross income and deductible by the defendant from his gross income to determine the total child support obligation and the allocation between the respective parties.
The court has considered all of the statutory factors concerning custody and visitation set out in Connecticut General Statutes §§46b-56, 46b-56a and 46b-59. The court has further considered all of the factors in Connecticut General Statutes §§ 46b-81, 46b-82, 46b-89 and46b-62 and other pertinent statutes, earnings and earning capacity differentials, causes for the breakdown of the marriage and the CT Page 13379 consequences of the financial awards set forth below. Judgment shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown. It is furthered ordered that:
1. ALIMONY. For a period of two years from the date hereof the defendant shall pay to the plaintiff periodic alimony in the amount of $300 per week. Following the expiration of said two years period alimony shall be decreased to $150 per week for the ensuing eight years. For tax purposes alimony shall be includable in the plaintiffs income and deductible from the defendant's income. Alimony shall be non-modifiable as to term and shall terminate upon the remarriage of the plaintiff, the death of either party or the plaintiffs cohabitation with an unrelated male.
2. AUTOMOBILES. The plaintiff shall retain her 1997 Toyota Camry and the defendant shall retain his 1999 Toyota Sierra subject to the outstanding auto loan which he shall pay and hold the plaintiff harmless therefrom.
3. JEWELRY AND FURS. Each party shall retain their jewelry and furs.
4. HOUSEHOLD FURNITURE AND FURNISHINGS. The parties shall equitably divide their household furniture and furnishings.
5. BANK ACCOUNTS. Each party shall retain their own bank accounts. Any joint accounts existing at the beginning of trial shall be divided equally between the parties.
6. STOCK OPTIONS. The defendant shall retain his stock options he presently has with his employer.
7. NEW CENTURY ENERGY STOCK. The defendant shall retain the New Century Energy stock he inherited from his father.
8. LIFE INSURANCE. Each of the parties shall maintain their present life insurance policies for the benefit of the minor children and shall name the minor children as irrevocable beneficiaries until the youngest child graduates from high school or attains the age of nineteen years, whichever first occurs.
9. MAGELLAN IRA. The defendant shall retain his Magellan IRA account.
10. MARITAL RESIDENCE. The parties are the owners in joint tenancy of the marital residence known as 258 Carriage Drive and located in Kensington, Connecticut. The court finds that the fair market value of the marital residence is $200,500 and is encumbered by two mortgages in CT Page 13380 the aggregate amount of $32,352. The plaintiff shall quit claim to the defendant all of her right, title and interest in and to the marital residence. The quit claim deed shall be held in escrow by the defendant's attorney and immediately upon receipt of said quit claim deed the defendant shall refinance the marital residence and pay to the plaintiff one-half of the net equity in the property which is found to be $168,148. However, the defendant, in arriving at the net equity, shall be entitled to deduct the closing costs in connection with the refinance but limited to legal fees and the like and excluding any tax or other escrow accounts required by the lender.
11. DEFERRED COMPENSATION PLANS. Each of the parties shall transfer to the other 50% of their respective deferred compensation plans by Qualified Domestic Relations Orders. The deferred compensation plans shall include the 401k and other pension plans presently owned by the defendant and the MERF account presently owned by the plaintiff. The court shall retain jurisdiction.
12. LEGAL FEES. Each of the parties shall pay whatever amounts are still due and owing to their respective attorneys. The legal fees for the attorney for the minor children shall be divided equally between the parties and paid within sixty days from the date hereof.
13. CHILDREN
 a. CUSTODY. The parties shall have joint legal custody of their two children. Primary residence of the older child, Daniel, shall be with the plaintiff. Primary residence of the younger child, Jonathan, shall be with the defendant.
b. PARENTING TIME.
 1. Plaintiff shall have parenting time with Jonathan every other weekend (Friday after school and defendant to drive Jonathan to school Monday morning) and one night per week for dinner.
 2. Plaintiff shall have parenting time with both sons on her birthday as well as on Mother's Day.
 3. Defendant shall have parenting time with both sons on his birthday as well as on Father's Day.
 c. HOLIDAYS (days in which there is no employment for Federal workers) shall be alternated on an annual basis. The exceptions to alternating holidays are: (1) that Christmas breaks are to be divided so that one parent has exclusive parenting time from the CT Page 13381 first day of Christmas break to Christmas Day morning, and the other parent has Christmas Day morning to the first day back to school in January — this plan to be alternated annually; (2) the parent who has the latter portion of Christmas break shall have parenting time with the child(ren) during February break; and (3) Thanksgiving break and Easter/April break shall be alternated annually.
14. JOINT PARENTING.
a. Neither party shall hinder, thwart, or in any other fashion deter the free and open communication between child(ren) and the other party.
b. Should an emergency or conflict arise such that one party cannot care for the child(ren) in his/her care on a specific day, the other party shall be given first right of refusal to care for the child(ren).
c. Both parents shall promptly notify the other of any medical appointments or medical emergency involving their child(ren). As the parties will have joint custody, both parents shall consult one another for decisions regarding the education, medical decisions, and religious upbringing of the children.
15. CHILD SUPPORT.
Counsel for the parties are ordered to prepare child support guidelines worksheets based upon the following:
a. The plaintiffs current weekly gross earnings of $355.68.
b. The defendant's current weekly gross earnings of $1,717.69.
 c. The plaintiffs gross earnings shall be increased to include alimony received.
d. The defendant's gross earnings shall be decreased for alimony paid.
e. The defendant is entitled to claim both children for tax purposes.
f. The parenting plan.
If the parties are unable to agree on child support the court will, following a hearing, enter orders.
16. OTHER ORDERS RELATING TO THE CHILDREN.
a. As the only home the children have known is the marital home, the CT Page 13382 defendant shall remain in the marital home so that: (1) the children are not wholly displaced from their traditional home; and (2) the children remain in the Kensington school district.
 b. Should either or both children request to see a counselor, neither parent shall block or thwart the children's efforts to meet with a counselor.
 c. Neither parent shall speak disparagingly of the other during their interaction with, or in the presence of, the minor children.
17. RELOCATION.
 a. Prior to the younger child's graduation from high school, should either parent desire to relocate more than twenty (20) miles from the town of Kensington, notice shall be given to the other parent of such intent to move. Said notice shall be made, in writing, at least forty-five (45) days prior to such intended move.
18. MEDICAL INSURANCE.
 a. The Defendant shall maintain the children on his health insurance plan as long as they remain eligible dependents.
John R. Caruso, Judge.